UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

_____

R.N. (hereinafter "Rick") by his parent,
   R.N. (hereinafter "Rose"), and
ROSE, Individually, and on behalf of all
   others (parents and students) similarly
   situated,

                                        Plaintiffs,

                                                                          **DECISION AND ORDER**
                                                                              11-CV-673A

           v.


BUFFALO CITY SCHOOL DISTRICT
   BOARD OF EDUCATION and
JAMES A. WILLIAMS Ed.D.,
   Superintendent,

                                        Defendants.

_____

## I.    INTRODUCTION

        Pending before the Court is a motion (Dkt. No. 4) by plaintiffs "Rick" and

"Rose" for class certification pursuant to Rule 23 of the Federal Rules of Civil

Procedure ("FRCP").[1]  Plaintiffs seek class certification to correct what they

_____

        [1] Plaintiffs' full names are concealed because one is a minor and the other
is a parent suing on the minor's behalf.  *See* FRCP 5.2(a) (requiring redaction of
a minor's name); *P.M. v. Evans-Brant Cent. Sch. Dist.*, No. 08-CV-168, 2008 WL
4379490, at *3 (W.D.N.Y. Sept. 22, 2008) (Arcara, *C.J.*) ("[I]n an action
commenced by a parent or guardian on behalf of a minor child pursuant to the
IDEA, the plaintiffs should be permitted to proceed, as a matter of course, using
initials in place of full names in public filings with the Court.").

perceive as systemic problems in the Buffalo Public School District (the "District") regarding how disabled students receive appropriate educational services. According to plaintiffs, defendants deprived them of appropriate educational services because they left Rose out of the planning process and mismanaged resources in a way that likely manifests itself in every school in the District. Defendants counter that plaintiffs do not meet the standard for class certification because all of the allegations in the complaint relate to themselves and because they already settled their claims against them.

The Court held oral argument on November 7, 2011.  For the reasons below, the Court finds that plaintiffs' prior settlement with defendants has stripped this case of any live controversy.  Accordingly, the Court dismisses the complaint *sua sponte* for lack of subject-matter jurisdiction and denies the motion for class certification as moot.

## II.    BACKGROUND

This case concerns plaintiffs' efforts to ensure that Rick receives an education tailored to fit his special education needs.  Rick was born in 1994 and attended ninth-grade at a school within the District in the 2010-11 school year. Rick has been diagnosed with cognitive disorder, attention deficit hyperactivity disorder, bipolar disorder, and depression.  Rick's diagnoses have prompted defendants' District-wide Committee for Special Education ("CSE") to classify him as disabled as defined under the Individuals with Disabilities Education Act

2

("IDEA"), 20 U.S.C. §§ 1400–1482.  The classification of Rick as disabled and the District's receipt of federal education funding trigger certain obligations that defendants have under the IDEA.  Defendants have a master obligation under the IDEA to provide Rick with a Free and Appropriate Public Education ("FAPE").  *See* 20 U.S.C. § 1412(a)(1)(A) (conditioning funding on ensuring that "[a] free appropriate public education is available to all children with disabilities residing in the State between the ages of 3 and 21, inclusive, including children with disabilities who have been suspended or expelled from school.").  To ensure that Rick receives an FAPE, the school-level CSE in Rick's school has an obligation to develop an Individual Educational Program ("IEP") for him each year.  *See id.* § 1412(a)(4) (conditioning funding on ensuring that "[a]n individualized education program . . . is developed, reviewed, and revised for each child with a disability in accordance with section 1414(d) of this title.").

Rick's mother Rose began seeking remedies against defendants because she believes that they did not fulfill their IDEA obligations to her and Rick for the 2010-11 school year.  In general, plaintiffs believe that the school-level CSE for Rick's school lacked a District representative who knew about the District's available resources and who had the authority to commit those resources as necessary to guarantee Rick an FAPE.  According to plaintiffs, improper staffing of the CSE at Rick's school created two specific problems in the 2010-11 school year.  When a District school psychologist evaluated Rick in February 2011 and

3

recommended smaller classes with a 15:1 student-to-teacher ratio, defendants
incorporated that recommendation into Rick's IEP but never acted on it.  In April
2011, when Rose requested an even smaller classroom ratio of six students to
one teacher and one teacher's aide (6:1:1), the school-level CSE erroneously told
her that it lacked the authority to make such a recommendation.  Rose believes
that defendants left her out of the process of planning Rick's IEP as a result.
Further, plaintiffs believe that the failure to make this recommendation resulted
from the absence in the school-level CSE of a District representative who knew
what authority the CSE actually had and what District resources were available.
Plaintiffs conclude that this alleged mistake denied Rick his right to an FAPE for
the 2010-11 school year.  Plaintiffs also suspect that every school in the District
has the same problem, extrapolating their experiences to all other District
schools.

Plaintiffs pursued administrative and judicial remedies to correct what they
perceived as a denial of Rick's right to an FAPE.  On June 17, 2011, Rose's
attorneys requested an administrative hearing to address the denial of Rick's
educational rights.  While the hearing was pending, plaintiffs filed their complaint
in this case on August 11, 2011.  Plaintiffs proceeded to file the complaint
because they consider the problems with the CSE at Rick's school to be systemic
throughout the District and thus incapable of resolution through the administrative
process.  After reciting the problems that plaintiffs had requesting smaller class

4

sizes and obtaining parental involvement for the planning process, the complaint lists two claims. In the first claim, plaintiffs accuse defendants of denying Rick and similarly situated children an FAPE as required under the IDEA. Plaintiffs also allege that defendants denied Rose and similarly situated parents their rights under the IDE a to participate in the formation of IEPs for their children. In the second claim, plaintiffs make similar accusations against defendants under state law. Plaintiffs seek a declaratory judgment that defendants' policies and practices concerning school-level CSEs violate the IDEA and state law; a preliminary and permanent injunction requiring defendants to change their practices and to submit a remedial plan to the Court; and costs and attorney fees.

On October 7, 2011, approximately two months after filing the complaint, plaintiffs entered a settlement agreement with defendants over their allegations of IDEA violations. (*See* Dkt. No. 22-2.) In the settlement, defendants agreed to a 15:1 class size for Rick and up to 65 hours of home instruction for the 2011-12 school year. Defendants agreed further to convene a CSE meeting, presumably with Rose's knowledge and participation, to incorporate prior psychological evaluations into Rick's IEP to the extent that they had not done so already. Paragraph 8 of the settlement agreement allowed plaintiffs to continue this litigation for "systemic issues raised" in the complaint without waiving any affirmative defenses that defendants might want to pursue.

Along with the filing of the complaint, plaintiffs filed the pending motion for class certification on August 12, 2011.  Plaintiffs seek class-action certification under any or all of FRCP 23(a), 23(b)(2), and 23(b)(3).  Plaintiffs currently have personal knowledge only of the IDEA policies and practices at Rick's school. Nonetheless, plaintiffs suspect that defendants operate school-level CSEs in the same way at all schools in the District and have requested discovery to confirm their suspicion.  Plaintiffs assert that if their suspicions are correct then many students throughout the District are being deprived of their rights under the IDEA. Accordingly, plaintiffs request certification of a class consisting of disabled children of ages five through 21 residing in the District, along with their parents. Plaintiffs contend that they can serve as representatives of the entire class because the problems that they experienced in the 2010-11 school year are typical of the problems that children and parents in the entire class would experience.  Defendants counter that plaintiffs have not met their burden for class certification for two reasons.  First, all of plaintiffs' factual allegations relate to themselves only and not to any other students or parents.  Second, defendants settled all of plaintiffs' issues on October 7, 2011.  According to defendants, the settlement eliminates any chance that plaintiffs can establish a refusal to make corrections that would make class certification and injunctive relief appropriate.

III.   **DISCUSSION**

A.   *Subject-Matter Jurisdiction*

Before the Court addresses the criteria for class certification, it will address

whether plaintiffs' settlement with defendants stripped this case of any live

controversy and thus deprives the Court of subject-matter jurisdiction.  "Although

neither party has suggested that we lack . . . jurisdiction, we have an independent

obligation to consider the presence or absence of subject matter jurisdiction *sua*

*sponte*."  *Joseph v. Leavitt*, 465 F.3d 87, 89 (2d Cir. 2006) (citation omitted); *see*

*also Ins. Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee*, 456 U.S.

694, 701 (1982) ("The validity of an order of a federal court depends upon that

court's having jurisdiction over both the subject matter and the parties . . . .

Federal courts are courts of limited jurisdiction.").  "Article III, of course, gives the

federal courts jurisdiction over only 'cases and controversies,' and the doctrine of

standing serves to identify those disputes which are appropriately resolved

through the judicial process."  *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)

(citations omitted); *see also Cooper v. U.S. Postal Serv.*, 577 F.3d 479, 489 (2d

Cir. 2009) ("Article III of the Constitution limits the judicial power of the United

States to the resolution of cases and controversies.  This limitation is effectuated

through the requirement of standing.") (citations omitted).

"[T]he irreducible constitutional minimum of standing contains three

elements.  First, the plaintiff must have suffered an 'injury in fact'—an invasion of

a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not 'conjectural' or 'hypothetical.'  Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be fairly . . . trace[able] to the challenged action of the defendant, and not . . . th[e] result [of] the independent action of some third party not before the court. Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992) (alterations in the original) (internal quotation marks and citations omitted).

Here, plaintiffs have failed to make any showing that they continue to suffer an injury in fact after their October 7, 2011 settlement with defendants.  Despite conclusory statements about other students suffering injuries and about those injuries being systemic in nature, plaintiffs' complaint focuses on two main injuries particular to them.  Plaintiffs allege in the complaint that defendants failed to arrange for reduced class sizes for Rick when he needed them.  The settlement agreement explicitly guarantees Rick a 15:1 class size for the 2011-12 school year, plus 65 hours of home instruction, plus the possibility of additional arrangements pending the results of the promised CSE meeting.  Plaintiffs allege further in the complaint that Rose should have been allowed to attend meetings at which defendants shaped Rick's IEP.  In response, the settlement agreement guarantees a CSE meeting within 15 days of its execution.  Although the

8

settlement agreement does not say so explicitly, Rose almost certainly will attend that meeting given that "[t]he parents of a child with a disability must be afforded an opportunity to participate in meetings with respect to (i) The identification, evaluation, and educational placement of the child; and (ii) The provision of FAPE to the child."  34 C.F.R. § 300.501(b).  Having forced defendants to remedy their grievances through a written settlement agreement, plaintiffs have no injuries left and cannot claim without further evidence that their injuries will repeat in the future.  *See Lamar Adver. of Penn, LLC v. Town of Orchard Park*, 356 F.3d 365, 375 (2d Cir. 2004) ("The voluntary cessation of allegedly illegal conduct usually will render a case moot if the defendant can demonstrate that (1) there is no reasonable expectation that the alleged violation will recur and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.") (internal quotation marks and citations omitted); *accord Lillbask ex rel. Mauclaire v. State of Conn. Dep't of Educ.*, 397 F.3d 77, 88–89 (2d Cir. 2005).

Under these circumstances, and despite the provision in Paragraph 8 of the settlement agreement that left plaintiffs free to litigate claims of systemic violations, the settlement agreement reduced this case to a request for an abstract declaration that defendants should have handled plaintiffs' concerns better in the first instance.  "However, a mere demand for declaratory relief does not by itself establish a case or controversy necessary to confer subject matter jurisdiction . . . . Such a declaration seemingly would verge on the status of an

advisory opinion, which, of course, no federal court is empowered to deliver."  *S. Jackson & Son v. Coffee, Sugar & Cocoa Exch.*, 24 F.3d 427, 431–32 (2d Cir. 1994) (citations omitted); *see also Altman v. Bedford Cent. Sch. Dist.*, 245 F.3d 49, 73 (2d Cir. 2001) (dismissing a First Amendment Free Exercise case as moot where  "no plaintiff could claim any direct injury from activities conducted at Pound Ridge Elementary").  Without more of a concrete injury to address, the Court declines to make such an abstract declaration and finds instead that it lacks subject-matter jurisdiction.

**B.    *Exhaustion of Administrative Remedies***

In the alternative, even if the Court decided that this case presented a live controversy to resolve, it would have to decide whether plaintiffs exhausted administrative remedies or could be excused for a failure to do so.  "[B]efore the filing of a civil action under such laws seeking relief that is also available under this subchapter, the procedures under subsections (f) and (g) shall be exhausted to the same extent as would be required had the action been brought under this subchapter."  20 U.S.C. § 1415(l); *see also Polera v. Bd. of Educ.*, 288 F.3d 478, 483 (2d Cir. 2002) ("A plaintiff's failure to exhaust administrative remedies under the IDEA deprives a court of subject matter jurisdiction.") (citation omitted). Subsection (f) requires plaintiffs to complete an impartial due process hearing; subsection (g) requires plaintiffs to appeal adverse hearing results to the New York State Department of Education.  Plaintiffs can avoid administrative

proceedings only where "exhaustion would be futile because administrative procedures do not provide adequate remedies." *Heldman ex rel. T.H. v. Sobol*, 962 F.2d 148, 158 (2d Cir. 1992) (citations omitted). "Such futility has been found where: (1) the plaintiff would be seeking administrative relief from the same entity that failed to implement specific provisions of the student's individualized education program ('IEP'); (2) the problems alleged are 'systemic violations' that cannot be addressed by the available administrative procedures; or (3) the agency would have been unable to remedy the alleged injury at the time it occurred." *Levine v. Greece Cent. Sch. Dist.*, No. 08-CV-6072, 2009 WL 261470, at *4 (W.D.N.Y. Feb. 4, 2009) (Telesca, *J.*) (citations omitted). The hallmark of a "systemic violation" is that "plaintiffs' problems could not have been remedied by administrative bodies because the framework and procedures for assessing and placing students in appropriate educational programs were at issue, or because the nature and volume of complaints were incapable of correction by the administrative hearing process." *J.S. ex rel. N.S. v. Attica Cent. Schs.*, 386 F.3d 107, 114 (2d Cir. 2004).

Here, plaintiffs have made allegations specific to themselves that a state administrator or hearing officer could have addressed. Plaintiffs complained that defendants deprived Rick of a smaller class size that he needed. A state administrator could have directed that placement if the parties had not settled. Plaintiffs complained also that defendants left Rose out of the process of

designing Rick's IEP.  A state administrator could have ordered defendants to make Rose a part of the planning process within the existing regulatory framework.  Plaintiffs have stated in conclusory fashion that students across the District are suffering the same injuries and that their allegations are "systemic" as a result, but this allegation is groundless.  Under these circumstances, plaintiffs would have been required to precede this litigation with administrative proceedings as set forth in 20 U.S.C. § 1415(f-g) and associated regulations.

## IV.    CONCLUSION

For all of the foregoing reasons, the Court finds that it lacks subject-matter jurisdiction over this case and dismisses the complaint *sua sponte*.  The Court will retain ancillary jurisdiction to resolve any dispute over attorney fees arising under Paragraph 6 of the settlement agreement.  Plaintiffs' motion for class certification (Dkt. No. 4) is denied as moot.

The Clerk of the Court shall close this case.

SO ORDERED.

*s/ Richard J. Arcara*
HONORABLE RICHARD J. ARCARA
UNITED STATES DISTRICT JUDGE

DATED:December 2, 2011